CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California 95112
Telephone: (408) 295-9555
Facsimile: (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

NOVASOLAR, INC., dba Novasolar Technologies, Inc.,

           Debtor.

Case No. 12-54528

CHAPTER 11

**STATUS CONFERENCE STATEMENT**

**Date: August 2, 2012**
**Time: 11:00 a.m.**
**Location:**
   United States Bankruptcy Court
   280 S. First St.
   San Jose, CA 95113

COMES NOW, Debtor and Debtor-in-Possession NOVASOLAR, INC., dba NovaSolar Technologies, Inc., Debtor and Debtor-in-Possession ("Debtor" or "Technologies") and submits this Status Conference Statement:

**I. Nature of Operations and Factors Leading To Filing.**

The Debtor and its business are and were part of the solar market and focused on solar farm planning, construction, and connection to power grids. Debtor's primary funding came from its sole shareholder NovaSolar Holdings Limited, a British Virgin Island Company located in Hong Kong ("Holdings").

Debtor developed intellectual property in the form of patent applications, patents, trade secrets, design and design documents, and test procedures and results ("Debtor's Intellectual

Property" or "Debtor's IP"). Debtor's IP was developed exclusively for Holdings. As part of Debtor's IP development, Debtor also employed people in the supply chain to contract with suppliers to manufacture production equipment that embodies Debtor's IP and other people to transfer the equipment, production recipes, and other intellectual property to factories that Holdings and Holdings' other subsidiaries were planning to construct.

During 2011 Debtor was operating out of commercial property in Fremont, California leased from Arden Realty Limited Partnership ("Arden") and employed approximately seventy (70) employees. The commercial property was undergoing significant construction pursuant to a contract between the Debtor and a general contractor (XL Construction). However, as a result of the sudden downturn in the solar market, the general downturn of world economics, and an unexpected absence of anticipated funding from Holdings, Debtor was not able to pay the general contractor, employees, and other operational expenses.

As a result of Debtor's inability to pay its employees, Debtor was left with unpaid wages and associated payroll taxes and was forced to furlough and/or lay off employees. Debtor owes a substantial amount of money to its employees and for associated payroll taxes-much of which may be entitled to priority. As a further result of Debtor's inability to pay the general contractor, the general contractor and various subcontractors asserted mechanics' liens against Arden's real property. In turn, Arden filed an unlawful detainer action against the Debtor, secured possession of the real property, secured an unlawful detainer judgment, and filed an action against Debtor for recovery of approximately 150% of the monies asserted by the general contractor and subcontractors against Arden's real property.

Debtor commenced this bankruptcy to address the lien claims of Arden; to address the outstanding debts to its employees, governmental agencies, Ardent, the general contractor, and various others; to provide it an opportunity to reorganize itself relative to the substantial changes in the solar industry and market; to provide itself an opportunity to pursue its rights and remedies against Holdings for what Debtor generally describes as Holdings' failure to honor its assurances to provide sufficient funding to pay for Debtor's operation; and/or to

market and sell its assets, mostly specialized equipment, to a 'value' buyer or partner. In the absence of the commencement of this bankruptcy Debtor's creditors were unlikely to receive any recovery.

**II. Debtor's Attendance at The Initial Debtor Interview/Meeting of Creditors.**

On July 10, 2012, Debtor, through its CEO Darien Spencer and its Secretary and court appointed Responsible Individual Marvin Keshner, attended an Initial Debtor Interview ("IDI") conducted by the US Trustee. As part of the IDI the Debtor was asked to provide various documents, which the Debtor did provide, and to review various schedules for amendment.

On July 18, 2012, Debtor, through its CEO Darien Spencer and its Secretary and court appointed Responsible Individual Marvin Keshner, attended the Meeting of Creditors. The US Trustee continued the Meeting of Creditors to August 1, 2012 as a holding date relative to the US Trustee's request that the Debtor produce the documents requested at the IDI and review various schedules for amendment.

**A. Compliance With US Trustee Requests.**

As indicated hereinabove, Debtor has produced requested documentation to the US Trustee. Debtor anticipates addressing potential amendments to its schedules as a result of discussions with the US Trustee.

Debtor has established debtor-in-possession accounts and has accepted the US Trustee's offer to assist the Debtor in Debtor's preparation of its Monthly Operating Reports-primarily its first report.

**III. Estate's Need For Professionals.**

At this time Debtor anticipates the need for some professionals, including attorneys, accountants, and 'consignment' personnel. In this regard, Debtor is aware that it needs court approval to employ and pay professionals.

Debtor has already secured an order employing Debtor's counsel. Debtor anticipates filing an application to employ an accountant to prepare its federal and state corporate income tax returns for the years ended June 30, 2011 and June 30, 2012. Debtor also

Case: 12-54528   Doc# 31   Filed: 07/25/12   Entered: 07/25/12 14:48:19   Page 3 of 7

anticipates that it may need to employ an auctioneer and/or 'consignment' professional to assist Debtor in the sale of some of its physical assets-those the Debtor believes are not necessary to a reorganization or to a sale/partnership of the business.

**IV. Unique Issues.**

Debtor has three relatively 'unique' issues, each of which is discussed hereinafter.

**A. Holdings.**

Holdings, as stated hereinabove, is Debtor's 100% shareholder and source of Debtor's funding. Pre-petition, Debtor worked with Holdings to insure that adequate funding was available from Holdings for the Debtor's operations, employment of personnel, and commencement of construction at its leased facility and thereon proceeded to operate, employ personnel, and commence construction on its leased facility. Holdings, for example, reviewed and approved budgets, made decisions relative to Debtor's staffing levels, equipment purchases, leases, and construction. Funds were transferred from Holdings to the Debtor for payroll and other expenses as needed-sometimes months in advance and others as needed. Debtor was consistently assured that funding from Holdings for Debtor's continued operation was forthcoming.

However, in late November 2011, the promised funding from Holdings did not arrive. The absence of the promised funding from Holdings left Debtor without the ability to fully operate, pay its employees and associated payroll, pay its general contractor, and pay other operational expenses. Debtor was unable to secure additional funding prior to commencement of this case.

Debtor anticipates filing an adversary proceeding against Holdings to compel Holdings to honor the obligation to provide the Debtor with funding to address Debtor's liabilities or for damages.

**B. Arden.**

The second issue relates to the lien claims of Arden[1]. Arden, Debtor's former landlord,

---

[1] The lien claims of Arden are the only known lien claims against Debtor's assets.

(continued...)

will presumably assert lien claims against the Debtor pursuant to the unlawful detainer judgment and an underlying state court action.

While Debtor has material disputes relative to the validity of the underlying lien claims, Debtor submits that such lien claims are preferences pursuant to 11 U.S.C. 547 as they were first obtained within ninety (90) days of the commencement of the bankruptcy, for or on account of an antecedent debt owed by the Debtor before such transfers were made, and while the Debtor was and presumed to be insolvent. On July 24, 2012, Debtor commenced an adversary proceeding against Ardent pursuant to 11 U.S.C. 547 (AP#12-05152).

**C. Asset Sales.**

Debtor has assets that have potentially substantial value to a prospective value buyer/partner and Debtor believes it can generate the most value for its operation and assets if it enters into a partnership or sale agreement with a 'value' buyer. In addition, Debtor may be able to create additional value with a prospective buyer/partners if such includes Holdings, which holds the patents developed by the Debtor. At this time the Debtor is in discussions with several prospective 'value' buyers/partners on sale agreements/partnerships which may or may not include Holdings.

In addition, at the time of commencement of this case, Debtor owned various equipment, generally described in its schedules. Some of the equipment may be necessary for a sale or partnership with a value buyer and some is not longer necessary. Debtor anticipates immediately moving for court approval to sell some of its equipment, namely, 3 ESPEC environmental test chambers and 1 Trane Chiller ("The Equipment") to Capital Asset Exchange & Trading, LLC. ("CAE") for a total of $44,500.00–an offer which reflects a significant increase from prior offers and sales. Debtor believes it will have additional interim sales of non-essential assets in the next few months.

**V. Financial Results From Post Petition Operations.**

At this time, Debtor's operations consist of Debtor working with prospective

---

[1](...continued)

partners/value buyers to partner with the Debtor and/or to buy Debtor's assets and working to liquidate assets Debtor considers unnecessary for its operations or to potential partners/value buyers.

**VI. Litigation Status.**

**A. Adversary Proceedings.**

As indicated hereinabove, Debtor anticipates two adversary proceedings. On July 24, 2012, Debtor commenced an adversary proceeding against Ardent pursuant to 11 U.S.C. 547 and anticipates the filing of an adversary proceeding against Holdings.

**B. State Court Litigation.**

At the time of commencement of this bankruptcy case the Debtor was a party to a few state court litigation matters, including an unlawful detainer judgment by Arden, additional litigation by Arden relative to mechanics' liens, litigation by the general contractors and subcontractors, and employees for unpaid wages. Debtor understands the parties to these state court matters are aware of the bankruptcy filing, are aware of the bankruptcy's automatic stay, and have either appeared in the bankruptcy case in the form of attending the Meeting of Creditors or filing claims.

**VII. Chapter 11 Plan And Prospective Timing.**

Debtor's basic plan of reorganization is two-fold: (1) pursue a value buyer/partner to maximize the value of Debtor's business and associated assets and, as discussed hereinabove, pursue its claim against Holdings (2) liquidate its non-essential assets.

At this time (and as described at the Meeting of Creditors) Debtor continues discussions and negotiations with prospective value buyers/partners, including one from Korea and one from Japan. While there are general similarities and differences between the two primary prospects, the potential terms of agreements with these prospective buyers/partners and Holdings will be forthcoming after due diligence is completed. Debtor anticipates that by October 2012 it will have sufficient information to determine whether it can move forward with a sale/partnership with one of these prospective buyers/partners, the impact such would have on Debtor's claims against Holdings, and recovery to the estate. Therefore, Debtor does

not anticipate being ready to file a disclosure substantive disclosure statement and plan until approximately December 2012.

//

**VIII. Conclusion.**

Debtor requests the court continue this Status Conference for ninety days.

Dated: July 25, 2012                        Campeau Goodsell Smith
/s/ William J. Healy
William J. Healy