CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:   (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

NOVASOLAR, INC., dba Novasolar Technologies, Inc.,

        Debtor.

Case No. 12-54528

CHAPTER 11

**STATUS CONFERENCE STATEMENT**

**Date: November 8, 2012**
**Time: 11:00 a.m.**
**Location:**
   United States Bankruptcy Court
   280 S. First St.
   San Jose, CA 95113

COMES NOW, Debtor and Debtor-in-Possession NOVASOLAR, INC., dba NovaSolar Technologies, Inc., Debtor and Debtor-in-Possession ("Debtor" or "Technologies") and submits this Status Conference Statement as an update to Debtor's prior Status Conference Statement and the Status Conference held on August 2, 2012:

**I.   Debtor's Sale of Assets.**

**A. Surplus Assets.**

Debtor has, pursuant to orders from this court, proceeded to sell some of its excess assets. Debtor closed a sale of surplus assets to CAE for $44,000. Debtor also closed sales of approximately eleven items of surplus assets (sold directly by Debtor) for $62,000 and has a potential buyer for an additional item for approximately $25,000. As discussed below Debtor

anticipates having any surplus assets to be sold directly by Debtor sold by Hilco Industrial, LLC ("Hilco") if the court approves if the court approves the Debtor's employment of Hilco and the sale of Debtor's assets by auction and through Hilco. In addition, Debtor also closed sales of assets through Industrial Asset Recyclers ("IAR") for $8,749. As discussed below Debtor anticipates having any surplus assets to be sold by IAR sold by Hilco (IAR's contract with Debtor will have expired prior to any sales through Hilco).

Debtors has filed and served a Motion to Sell additional surplus assets to CAE for a total of $115,000 (Zygo 7300-$90,000 and Spire Tester-$25,000). The hearing on the Motion To Sell is scheduled for November 9, 2012. As of the date of this statement Debtor has not received any objections to the motion.

**B. Debtor's Main Assets.**

As set forth in Debtor's initial Status Conference Statement, Debtor has assets that have potentially substantial value to a prospective value buyer/partner and Debtor believes it can generate the most value for its operation and assets if it enters into a partnership or sale agreement with a 'value' buyer, including if such includes NovaSolar Holdings (Debtor's shareholder) ("Holdings"), which holds the patents developed by the Debtor.

Pre-petition and post-petition Debtor has maintained discussions with several prospective 'value' buyers/partners on sale agreements/partnerships which may or may not include Holdings. At this time Debtor continues discussions and negotiations with at least one of the prospective value buyers/partners. However, for various reasons mostly related to industry wide issues, Debtor has not secured a 'value' buyer for its main assets.

Therefore, Debtor has negotiated an agreement with Hilco to sell Debtor's assets at auction. Hilco's lineage spans more than 50 years and in that time has repositioned assets valued at more than $3 billion, delivered more than 20,000 appraisals with values in excess of $150 million, has over 350,000 register buyers, converted over $150 billion of excess inventory into cash, and in 2011 conducted nearly 1,800 industrial asset dispositions, sold almost $1 billion of assets, and sold assets from 53 countries into 60 countries.

Hilco presented Debtor with an opinion of the value of the assets and based on recent

sales of identical or similar equipment and taking into account the available time frame estimated the sales range between $1,115,000-$1,480,000. Debtor and Hilco negotiated an agreement to cap Hilco's costs and expenses and effectively reduce its commission. Debtor still intends to pursue a 'value buyer' to buy Debtor's main assets and therefore its agreement with Hilco provides for a fixed fee if Debtor does not proceed to sale with Hilco and pursues a 'value buyer' with said fee to cover Hilco's expenses.

Debtor intend to have Hilco sell, at auction, Debtor's Main Assets, including assets not previously sold directly by the Debtor or by IAR, on an 'as is, where is" basis, market the assets, provide sales information, manage the sales process, and be responsible for on-site through the complete removal of all assets by the end of December 2012. The anticipated time line is as follows: in late November to early December inventory assets, market assets, and set auction pricing; in early December assets to be offered via online auction; and in late December invoice buyers, remove assets, and accounting of sales. At this time Debtor anticipates on-line auction dates for December 12th and 13th, 2012.

In this regard Debtor filed and served a Motion To Sell these main assets at auction through Hilco and the hearing is scheduled for November 9, 2012. As of the date of this statement Debtor has not received any objection to the motion[1].

**II.     Debtor's Continued Compliance With Bankruptcy Court Requirements.**

On July 10, 2012, Debtor, through its CEO Darien Spencer and its Secretary and court appointed Responsible Individual Marvin Keshner, attended an Initial Debtor Interview ("IDI") conducted by the US Trustee. As part of the IDI the Debtor was asked to provide various documents, which the Debtor did provide, and to review various schedules for amendment.

On July 18, 2012, Debtor, through its CEO Darien Spencer and its Secretary and court appointed Responsible Individual Marvin Keshner, attended the Meeting of Creditors.

Debtor is current with its Monthly Operating Reports.

---

[1] As discussed herein, Debtor has submitted an application to employ Hilco and the application includes evidence of a bond requested and required by the US Trustee.

## III. Estate's Need For Professionals.

Debtor secured court authority to employ some professionals, including attorneys, accountants, and 'consignment' personnel. As previously indicated Debtor has also filed an application to employ an auctioneer (Hilco) to assist Debtor in the sale of its physical. At this time Debtor does not anticipate the need to employ additional professional.

## IV. Adversary Proceeding.

### A. Arden.

At the time of commencement of this case Debtor had various lien claim asserted by its former landlord, Arden Realty, relative to an unlawful detainer judgment and an underlying state court action.

Debtor submitted that such lien claims are preferences pursuant to 11 U.S.C. 547 as they were first obtained within ninety (90) days of the commencement of the bankruptcy, for or on account of an antecedent debt owed by the Debtor before such transfers were made, and while the Debtor was and presumed to be insolvent. On July 24, 2012, Debtor commenced an adversary proceeding against Ardent pursuant to 11 U.S.C. 547 (AP#12-05152)("Adversary Proceeding"). Recently, pursuant to Stipulation For Judgment, a judgment was entered in the Adversary Proceeding in favor of Debtor and voiding the various liens.

### B. Holdings.

Holdings, as stated hereinabove, is Debtor's 100% shareholder and pre-petition was the source of Debtor's funding. Pre-petition, Debtor worked with Holdings to insure that adequate funding was available from Holdings for the Debtor's operations, employment of personnel, and commencement of construction at its leased facility and thereon proceeded to operate, employ personnel, and commence construction on its leased facility. Holdings, for example, reviewed and approved budgets, made decisions relative to Debtor's staffing levels, equipment purchases, leases, and construction. Funds were transferred from Holdings to the Debtor for payroll and other expenses as needed-sometimes months in advance and others as needed. Debtor was consistently assured that funding from Holdings for Debtor's continued

operation was forthcoming.

However, in late November 2011, the promised funding from Holdings did not arrive. The absence of the promised funding from Holdings left Debtor without the ability to fully operate, pay its employees and associated payroll, pay its general contractor, and pay other operational expenses. Debtor was unable to secure additional funding prior to commencement of this case.

Debtor anticipated filing an adversary proceeding against Holdings to recovery damages relating to Holdings' failure to honor the obligations to provide the Debtor with funding. In this regard Debtor continues to discuss with Holdings a potential resolution of the dispute and Holdings' ability to fund any potential resolution.

**V.    Chapter 11 Plan And Prospective Timing.**

Debtor's basic plan of reorganization is two-fold: (1) pursue a value buyer/partner to maximize the value of Debtor's business and associated assets and, as discussed hereinabove, pursue its claim against Holdings (2) liquidate its non-essential assets.

Previously Debtor anticipated that by October 2012 it would have sufficient information to determine whether it can move forward with a sale/partnership with one of these prospective buyers/partners, the impact such would have on Debtor's claims against Holdings, and recovery to the estate. Debtor has liquidated many non-essential assets. At this time Debtor believes that if it cannot promptly secure a 'value' buyer for its assets that it is in the best interests of the Debtor, the estate, and the creditors to proceed with a sale of assets by auction and through Hilco. In this regard, if Debtor's pending Motion To Sell at auction through Hilco is granted at the November 9, 2012 hearing then Debtor believes it can proceed with an auction in mid-December 2012 and have the sales closed and accounting of the proceeds by mid-January 2013.

**VI. Conclusion.**

Debtor requests the court continue this Status Conference for sixty days.

Dated: November 2, 2012                    Campeau Goodsell Smith
                                           /s/ William J. Healy
                                           William J. Healy

STATUS CONFERENCE STATEMENT

5