CAMPEAU GOODSELL SMITH, L.C.
SCOTT L. GOODSELL, #122223
WILLIAM J. HEALY, #146158
440 N. 1st Street, Suite 100
San Jose, California   95112
Telephone:   (408) 295-9555
Facsimile:    (408) 295-6606

ATTORNEYS FOR Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

NOVASOLAR, INC., dba Novasolar Technologies, Inc.,

               Debtor.

Case No. 12-54528

CHAPTER 11

**SECOND AND FINAL FEE APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR**

**Date: October 22, 2013
Time: 2:00 p.m.
Location:**
   United States Bankruptcy Court
   280 S. First St.
   San Jose, CA 95113

---

**SECOND AND FINAL FEE APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR**

## TABLE OF CONTENTS

| | Page |
|---|---|
| Introduction | 3 |
| Background | 4 |
| General Case Administration | 5 |
| Post-Petition Operations/Executory Contracts and Leases | 6 |
| Asset Sales | 6 |
| Creditor Claims Analysis | 6 |
| Negotiated Settlement | 7 |
| Applicant's Credit Against Debtor's Legal Fees | 7 |
| Fee Application | 7 |
| Conclusion | 8 |
| Certification by Attorney for Debtor | 10 |
| Debtor-in-possession's Statement | 11 |

**TO THE HONORABLE CHARLES NOVACK, UNITED STATES BANKRUPTCY JUDGE; THE CHAPTER 7 TRUSTEE; NOVASOLAR TECHNOLOGIES, INC; AND OTHER PARTIES IN INTEREST:**

Campeau Goodsell Smith ("CGS" or "Applicant"), general bankruptcy counsel to NovaSolar Technologies, Inc.,("Debtor") in the above entitled bankruptcy case ("Case"), hereby submits this Second and Final Application for Compensation And Reimbursement of Expenses by Attorney for Debtor ("Application") pursuant to sections 328 and 330 of title 11 of the United States Code (the "Bankruptcy Code"); Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and the Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses promulgated by the Executive Office of the United States Trustee pursuant to 28 U.S.C. § 586(a)(3)(A) (the "Compensation Guidelines"). By way of this Application, CGS seeks, among other things, (a) final allowance of compensation for services totaling $47,330.00, incurred during the period of November 1, 2012 through September 30, 2013 ("Application Period")[1], (b) allowance of all expenses, totaling $582.78 advanced during the Application Period and (c) final approval of the court's prior interim award of (December 21, 2012 (Doc#99)("Interim Award").

In support of this Application, CGS submits the Declaration of William J. Healy ("Healy Declaration"). In further support hereof, CGS respectfully represents as follows:

## I. Introduction

Since the initial meeting with Debtor, commencement of the Case, appointment of CGS as counsel for the Debtor, and throughout the Application Period, CGS has served as the Debtor's general bankruptcy counsel. CGS took a lead role in preparing, submitting, arguing, and negotiating the consensual resolution of a number of pleadings relating to the commencement of the Case, the administration of the Case, and the various aspects of Debtor's sale of Debtor's assets and business and reorganization efforts. CGS worked extensively with the Debtor, its

---

[1] The case was converted on April 16, 2013, the Application includes time post conversion and therefore the date range runs from the end of the interim fee application to the administrative bar date for claims.

representatives, and creditors throughout the Application Period.

Applicant previously filed and served an Application for Interim Compensation and Reimbursement of Expenses by Counsel for Debtor for the period of May 16, 2012 through October 31, 2012, the court heard the initial application on December 19, 2012, and a formal order was entered on December 21, 2012 (Docket #99) authorizing the Debtor to pay Applicant $83,767.50 in attorneys fees and $2,617.61 in costs.

The case was converted to Chapter 7 in April 2013 after the U.S. Trustee filed a motion to convert the case. The Debtor did not oppose the conversion.

**II.  Background.**

The Debtor and its business are and were part of the solar market and focused on solar farm planning, construction, and connection to power grids. Debtor's primary funding came from its sole shareholder NovaSolar Holdings Limited, a British Virgin Island Company located in Hong Kong ("Holdings").

Debtor developed intellectual property in the form of patent applications, patents, trade secrets, design and design documents, and test procedures and results ("Debtor's Intellectual Property" or "Debtor's IP"). Debtor's IP was developed exclusively for Holdings. As part of Debtor's IP development, Debtor also employed people in the supply chain and contracted with suppliers to manufacture production equipment that embodies Debtor's IP and other people to transfer the equipment, production recipes, and other intellectual property to factories that Holdings and Holdings' other subsidiaries were planning to construct.

During 2011 Debtor was operating out of commercial property in Fremont, California leased from Arden Realty Limited Partnership ("Arden") and employed approximately seventy (70) employees. The commercial property was undergoing significant construction pursuant to a contract between the Debtor and a general contractor (XL Construction). However, as a result of the sudden downturn in the solar market, the general downturn of world economics, and an unexpected absence of anticipated funding from Holdings, Debtor was not able to pay the general contractor, employees, and other operational expenses.

As a result of Debtor's inability to pay its employees, Debtor was left with unpaid wages

and associated payroll taxes and was forced to furlough and/or lay off employees. Debtor owed a substantial amount of money to its employees and for associated payroll taxes. As a further result of Debtor's inability to pay the general contractor, the general contractor and various subcontractors asserted mechanics' liens against Arden's real property. In turn, Arden filed an unlawful detainer action against the Debtor, secured possession of the real property, secured an unlawful detainer judgment, and filed an action against Debtor for recovery of approximately 150% of the monies asserted by the general contractor and subcontractors against Arden's real property. Arden then proceeded to assert various lien claims against Debtor's assets.

Debtor commenced this bankruptcy to address the various lien claims of Arden; to address the outstanding debts to its employees, governmental agencies, Arden, the general contractor, and various others; to provide it an opportunity to reorganize itself relative to the substantial changes in the solar industry and market; to provide itself an opportunity to pursue its rights and remedies against Holdings for what Debtor generally describes as Holdings' failure to honor its assurances to provide sufficient funding to pay for Debtor's operation; and/or to market and sell its assets, mostly specialized equipment, to a 'value' buyer or partner. In the absence of the commencement of this bankruptcy Debtor's creditors were unlikely to receive any recovery.

**III. General Case Administration.**

During the Application period, Applicant conferred with Debtor regarding the obligations required of it pursuant to the Bankruptcy Rules and the U.S. Trustee Guidelines, including preparation and review of monthly operating reports, calculation of U.S. Trustee fees and financial obligations of the Debtor. Applicant prepared for and attended various court hearings and communicated on various subjects with Debtor, representatives of the U.S. Trustee's office and the Bankruptcy Clerk's office. Prior to conversion, Applicant worked to outline a Chapter 11 plan and disclosure statement. Applicant also assisted Debtor in evaluating, responding to, and filing a statement of no opposition to the United States Trustee's motion to convert the case to Chapter 7. In addition, Applicant conferred with and assisted Debtor with its post-conversion requirements, including 1019 Statement and Report, Meeting of Creditors, and cooperating with the Chapter 7 Trustee relative to several pending matters, including turnover of estate assets.

In connection with the foregoing, Applicant expended 50.1 hours, at a cost to the estate of $16,292.50.

## IV. Post-Petition Operations/Executory Contracts and Leases.

As Debtor's general bankruptcy counsel, CGS was asked by Debtor to address and advise Debtor on various bankruptcy-specific and non-bankruptcy-specific issues arising in Debtor's general business operations, such as personnel issues, banking and financial issues, corporate issues, and claims asserted by debtor against various entities.

CGS employed Debtor's accountant and sought payment of professional services. CGS routinely assisted Debtor and its personnel in resolving its monthly operating report issues and in obtaining insurance. As Debtor's business operations were reduced, Applicant discussed with debtor post petition obligations.

In connection with the foregoing, CGS has expended 17.9 hours, at a cost to the estate of $6,817.50.

## V. Asset Sales.

Debtor and Applicant, after substantial discussion and analysis, concluded that the sale of Debtor's various assets would be a necessary part of any reorganization and payment to its creditors.

Throughout the Application Period Applicant had various discussions with Debtor and the sellers (consignment seller and auctioneer) regarding disposition of remaining assets, Applicant reviewed agreements between the Debtor and the Consignment Seller and Auctioneer and sought employment of the consignment seller to auction remaining assets of the Debtor, free and clear of various lien claims.

In connection with the foregoing, CGS expended 13.6 hours, at a cost to the estate of $5,780.00.

## VI. Creditor Claims Analysis.

Generally, debtors commence claims litigation at the conclusion of Chapter 11 plan confirmation proceedings. In this matter, no claims litigation (other than the Arden litigation) was undertaken. Applicant, nonetheless, reviewed numerous creditor claims as they

SECOND AND FINAL FEE APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR
6
Case: 12-54528    Doc# 141    Filed: 09/24/13    Entered: 09/24/13 15:14:40    Page 6 of 11

were filed with the Court and conferred with Debtor concerning their merit. At least during the Application Period the creditor claims analysis focused on the nature and extent of various post petition priority claims, including claims by various taxing authorities and numerous former employees of the Debtor.

In connection with the foregoing, over the past several months, Applicant expended 4.8 hours, at a cost to the estate of $2,040.00.

**VII. Negotiated Settlement**

CGS helped negotiate a settlement between Debtor, Holdings, and Arden and filed a motion to have the settlement approved. The settlement provided that if assets of Holdings were sold Debtor, and Arden would receive one third each of the sale proceeds in return Arden accepted a lower priority as a creditor in Debtor's bankruptcy case.

In connection with the foregoing, over the past several months, Applicant expended 23.1 hours, at a cost to the estate of $9,817.50

**VIII. Applicant's Credit Against Debtor's Legal Fees.**

In December 2012, Applicant agreed to credit Debtor $15,000.00 on future legal fees and costs less any amounts deducted by the court on Applicant's Interim Application. The Court deducted $10,580.00 from the Interim Application leaving an outstanding credit against future legal fees and costs in the amount of $4,420.00. This credit was deducted from the Final Fee Application by way of no charges pursuant to the agreement between Applicant and Debtor.

**IX. Fee Application.**

In the Interim Application, Applicant listed but did not request fees associated with preparing the Interim Application and no fees were received relative to the preparation of the Interim Application. Applicant spent approximately 19.4 hours preparing the Interim Application with a cost to the estate of $3,612.50.

Applicant has spent approximately 22.2 hours in preparing this Final fee application at a cost of approximately $3,080.00. Applicant has spent approximately 41.6 hours in preparing the interim and final fee application for a total cost to the estate of $6,692.50. (Per Guidelines, $6,715.89 is 5% of the combined application sums).

SECOND AND FINAL FEE APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR

7

Case: 12-54528    Doc# 141    Filed: 09/24/13    Entered: 09/24/13 15:14:40    Page 7 of 11

## X. Conclusion.

In the course of representation in these matters during the Application Period, Applicant has devoted in excess of 150 hours of professional services, as indicated on Applicant's project billing statements, which are attached as Exhibit A. The Statement identifies the individuals who have performed specific services and is summarized as follows:

| | | |
|---|---|---|
| Scott L. Goodsell (SLG) | 3.7 | 475.00/hr. |
| Scott L. Goodsell (SLG) | .6 | No Charge |
| William J. Healy (WJH) | 96.1 | 425.00/hr. |
| William J. Healy (WJH) | 17.3 | No Charge. |
| Kari L. Silva[2] (KLS) | 17.2 | 275.00/hr. |
| Kari L. Silva (KLS) | 16.4 | No Charge. |

In view of the time expended and the responsibilities assumed, Applicant respectfully submits that the reasonable value of its services hereinabove set forth is $47,330.00.

Applicant has also expended the sum of $582.78 for associated costs as set forth in Exhibit B. All requests for costs are based on the <u>Guidelines for Compensation of Professionals</u>.

Applicant believes that the services so rendered and costs so incurred herein were necessary and that the fees and costs requested constitute reasonable and necessary fees expended on behalf of the estate.

In accordance with its Rule 2016(b) Disclosure of Compensation, Applicant has previously received $96,381.00 ($10,000.00 retainer and $86,381.00 for interim fees) from Debtor in connection with the Chapter 11 case. No part of the monies previously received by Applicant has been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm. As the case is currently in a Chapter 7, Applicant does not have an alternative agreement (alternative to its attorney-client fee contract and orders from this court) with the Debtor regarding payment.

WHEREFORE, Applicant prays that this court enter its order (i) approving as final compensation for those Chapter 11 attorneys fees incurred and costs expended by Applicant

---

[2] Kari L. Bowyer recently changed her name to Kari S. Bowyer.

from November 1, 2012 through September 30, 2013 ("Application Period") in the sum of $40,637.50 for attorneys fees and $582.78 for costs ("Application") in its representation as further set forth above; (ii) $6,692.50 for attorneys fees in preparation of the Interim and Final Fee Application; (iii) approving as final its interim award (December 21, 2012 (Doc#99) for $83,767.50 in attorneys fees and $2,617.61 in costs; (iv) authorizing Debtor or the Chapter 7 trustee to pay to this Applicant the sum of $47,330.00 for services rendered and $582.78 for costs expended but not yet compensated by Debtors as set forth in this Application (with credit for retainer and previous payments thus far provided of $96,381.00); and (iii) for such further relief as this court deems proper.

DATED: September 24, 2013        CAMPEAU GOODSELL SMITH

By  William J. Healy
    William J. Healy
    Attorneys for Debtor

# CERTIFICATION ON SECOND AND FINAL APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR

I, William J. Healy, say:

1. I am an attorney with the law firm of Campeau Goodsell Smith ("CGS"), attorneys of record for debtors herein. I make this declaration in support of said law firm's application for interim compensation and reimbursement of expenses as attorneys for debtor in this Chapter 11 case. If called as a witness, I would competently testify as follows:

2. In accordance with its Disclosure of Compensation, Applicant previously received a retainer in the amount of $10,000.00 from the debtor in connection with this case. Applicant received payments of $86,381.00 (December 2012) from the Debtor pursuant to orders of this court (Doc#99).

3. No part of the monies previously received by Applicant have been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

4. On or around December 5, 2012, CGS agreed to provide the Debtor a credit against its future fees in the amount of $15,000.00 minus any reductions ordered by the court relative to CGS's interim fee application. The amount deducted from the interim fee application was $10,580.00 leaving a credit on future legal fees in the amount of $4,420.00. The credit has been deducted from the Final Fee Application by way of no charges pursuant to the agreement between CGS and the Debtor. The agreement was materialized in a correspondence to the Debtor's responsible individual, Marvin Keshner, dated December 5, 2012. (Please see a true and correct copy attached as Exhibit "D")

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at San Jose, California, on September 24, 2013.

/s/ William J. Healy
William J. Healy

## **DEBTOR-IN-POSSESSION'S STATEMENT RE FEE APPLICATION**

I, Marvin S. Keshner, say:

1. I am the Responsible Person for the debtor-in-possession.

2. I have reviewed the billings regarding the final Chapter 11 fee application filed by Campeau Goodsell Smith, counsel of record for the debtors-in-possession herein, and support said application.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Sonora County, California, on September ____, 2013.

     _____
     Marvin S. Keshner